Jennifer E. Duty, SBN 245308
jduty@nationalfunding.com
James E. Hawley, SBN 299723
jhawley@nationalfunding.com
NATIONAL FUNDING, INC.
9820 Towne Centre Drive
San Diego, California 92121
Tel:  (800) 361-4103
Fax:  (888) 841-3948

Attorneys for Plaintiff NATIONAL FUNDING, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| NATIONAL FUNDING, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> MODERN RENOVATIONS, LLC, a West Virginia Limited Liability Company; SHAWN LEE WOLFORD, an individual; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 8:20-cv-1374 <br><br> [Assigned to the Hon. David O. Carter] <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> **1. BREACH OF CONTRACT** <br> **2. BREACH OF GUARANTY** <br> **3. QUASI-CONTRACT** <br><br> Complaint Filed:  May 26, 2020 <br> Trial Date:  To Be Set |

/ / /

/ / /

/ / /

/ / /

/ / /

FIRST AMENDED COMPLAINT – CASE NO. 8:20-CV-1374

Plaintiff National Funding, Inc. hereby alleges as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff NATIONAL FUNDING, INC. ("National Funding" or "Plaintiff") is a licensed lender in the state of California under California Financial Code § 22000, *et seq.* and 10 California Code of Regulations §1404, *et seq.* and incorporated in the State of California with its principal place of business in San Diego, California.

2.      Plaintiff is informed and believes and thereon alleges that Defendant MODERN RENOVATIONS LLC is a Limited Liability Company registered in the state of West Virginia and is doing business in Martinsburg, West Virginia.

3.      Plaintiff is informed and believes and thereon alleges that Defendant SHAWN LEE WOLFORD is an individual residing in Martinsburg, West Virginia.  Mr. Wolford is the founder and equal member of Defendant MODERN RENOVATIONS LLC.

4.      Jurisdiction is proper as this controversy exceeds $75,000 and is between citizens of different States and Defendants have subjected themselves to jurisdiction in California based, in part, on the facts alleged in this First Amended Complaint, and their written agreement to be bound by a forum-selection clause the governs the dispute at issue.

5.      The true names and capacities, whether individual, corporate, associate, or otherwise of those defendants named herein as Does 1 through 10, inclusive, are unknown to Plaintiff at this time, who therefore sues these defendants by such fictitious names.  Plaintiff will amend this First Amended Complaint to reflect the true names and capacities of these Doe defendants once this information has been ascertained.  Each Doe defendant is in some manner responsible, liable and/or obligated to Plaintiff in connection with the occurrences, transactions, and obligations alleged herein.

6.     Each named defendant is, and at all times mentioned herein was, the undisclosed employee and/or agent of each and every other defendant and Doe defendant, and was acting within the purpose and scope of that employment and/or agency in performing the acts and omissions alleged herein. Plaintiff is also informed and believes, and on that basis alleges, that each defendant ratified, approved, and adopted as its own the acts of each of the other defendants.

## FACTS

7.     Plaintiff incorporates the allegations contained in Paragraphs 1 through 6, inclusive, as though fully set forth herein.

8.     Plaintiff is licensed by the California Department of Business Oversight as a California License Lender and is one of the largest private commercial lenders that provides working capital loans to small businesses across the United States.  Plaintiff has been in business since 1999 and funds loans over $5,000 that specifically require the loans to be used for business/commercial purposes only.

9.     As working capital loans, unlike traditional loans, the loans funded by Plaintiff are short term, cost-based loans with a set repayment amount and are not amortized, like a mortgage or auto-loan.  Therefore, the loans funded by Plaintiff do not accrue interest over time and are typically used for working capital, seasonal business expenses, inventory and equipment purchases, or hiring and training.

10.     Lending decisions are made from Plaintiff's office in California, loan agreements are executed by Plaintiff in California, loan funds are distributed to Plaintiff's borrowers from California, and the borrowers' payments are not accepted until received by Plaintiff in California.

11.     On or about August 26, 2019, MODERN RENOVATIONS LLC ("Borrower") executed a Business Loan Agreement, agreement number

FWC391984, with Plaintiff, whereby Borrower would receive an original loan from Plaintiff in the principal amount of $150,000.00. Such loan agreement provided for a total loan repayment obligation by Borrower of $188,998.92. Such loan agreement contained a guaranty, by which Defendant SHAWN LEE WOLDFORD guaranteed the repayment of the loan to Plaintiff. Such loan was repaid in full by Borrower to Plaintiff.

12. On or about February 24, 2020, Borrower executed a second Business Loan Agreement, agreement number FWC391984A, with Plaintiff (the "Loan Agreement"), whereby Borrower would receive an original loan from Plaintiff in the principal amount of $150,000.00. The Loan Agreement provided for a total loan repayment obligation of $199,499.52 to be paid by 176 consecutive daily payments of $1,133.52 from Borrower to Plaintiff. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "1" and incorporated herein by reference.

13. Paragraph 18 of the Loan Agreement, entitled "Consent to Jurisdiction and Venue", provides in relevant part that:

"Borrower and Lender agree that any action or proceeding to enforce or arising out of this Agreement may be commenced in any court of the State of California or in the United States District Court for the Southern District of California… Borrower and Lender agree that venue is proper in such courts."

14. Paragraph 32 of the Loan Agreement is a personal guaranty ("Guaranty"), by which Defendant SHAWN LEE WOLDFORD ("Guarantor") once again guaranteed to Plaintiff payment of all of the obligations of Borrower then owing or thereafter incurred, together with accrued interest, costs and attorneys' fees incurred in the collection thereof and for the enforcement of the Guaranty. Such Guaranty contained a forum-selection clause which provides in relevant part that:

"This Personal Guaranty will be exclusively construed in accordance with the laws of the State of California, and will inure to the benefit of Lender, its successors and assigns. THIS GUARANTEE AND EACH GUARANTOR HEREBY AGREE TO CONSENT TO THE EXCLUSIVE VENUE AND JURISDICTION OF ANY COURT OF THE STATE OF CALIFORNIA FOR ALL MATTERS OR IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CALIFORNIA."

15.    On or about February 24, 2020, Plaintiff deposited $150,000.00 into the bank account of Borrower, thereby fulfilling Plaintiff's primary obligation under the terms of the Loan Agreement.

16.    From February 26, 2020 up to and including March 31, 2020, Borrower timely made its daily weekday loan payments of $1,133.52. However, on April 1, 2020, Borrower failed to make its daily payment as such scheduled payment was returned for "insufficient funds".

17.    On April 2, 2020 and April 3, 2020, Borrower made its daily scheduled loan payments for each such day.

18.    On or about April 6, 2020, Borrower defaulted on the Loan Agreement by failing to make its daily payment as the payment was returned as "account frozen". Subsequent attempts by Plaintiff to withdraw scheduled payments from Borrower's account were returned as "account closed." Accordingly, pursuant to Paragraphs 15 and 16 of the Loan Agreement, Plaintiff has elected to declare a breach and the entire remaining balance of $168,894.48 is due and payable from Borrower and Guarantor.

19.    Plaintiff has made a demand on Borrower and Guarantor to pay the current amount due under the Loan Agreement, however Borrower and Guarantor have refuses to pay refuses to pay said sum, or any part thereof, and the sum of $168.894.48, together with accrued interest thereon, is due and payable from Borrower and Guarantor to Plaintiff.

## FIRST CLAIM FOR RELIEF

**(Breach of Contract against Defendant MODERN RENOVATIONS LLC and Does 1-5)**

20. Plaintiff incorporates the allegations contained in Paragraphs 1 through 19, inclusive, as though fully set forth herein.

21. The Loan Agreement was a legally binding agreement entered into by Plaintiff and Borrower.

22. By depositing the $150,000.00 into the bank account of Borrower, Plaintiff did all the significant things the Loan Agreement required Plaintiff to do.

23. On April 6, 2020, Borrower failed to timely make the daily payments required by the Loan Agreement, thereby harming Plaintiff.

24. As a proximate result of Borrower's breach of the Loan Agreement, Plaintiff has been damaged in the principal sum of not less than $168.894.48 plus prejudgment interest thereon, from the date of default until paid.

25. The Loan Agreement provides that Borrower will pay Plaintiff's reasonable attorneys' fees and costs incurred in enforcing the terms of the Loan Agreement. It has become necessary for Plaintiff to engage counsel to represent it for the purposes of bringing this action. Therefore, Plaintiff is entitled to a further and additional sum for reasonable attorneys' fees that it has incurred in this action.

## SECOND CLAIM FOR RELIEF

**(Breach of Guaranty against Defendant SHAWN LEE WOLFORD and Does 6-10)**

26. Plaintiff incorporates the allegations contained in Paragraphs 1 through 25 inclusive, as though fully set forth herein.

27.    Guarantor, concurrent with the execution of the Loan Agreement, executed the Guaranty.

28.    In reliance on the Guaranty, Plaintiff agreed to loan Borrower funds in the Loan Agreement.  Plaintiff would not have agreed to loan Borrower the funds in the Loan Agreement if not for the execution of the Guaranty by Guarantor.

29.    Demand has been made on Guarantor to pay the current amount due under the Loan Agreement as a result of Borrower's default.

30.    However, Guarantor refuses to pay said sum, or any part thereof, and the sum of $168.894.48, together with accrued interest thereon, is due and payable from Guarantor to Plaintiff.

31.    The Guaranty provides that Guarantor will pay all expenses and costs incurred by Plaintiff in enforcing the Guaranty including, but not limited to, reasonable attorneys' fees. It has become necessary for Plaintiff to engage counsel to represent it for the purposes of bringing this action. Therefore, Plaintiff is entitled to a further and additional sum for reasonable attorneys' fees that it has incurred in this action.

## **THIRD CLAIM FOR RELIEF**

### **(Quasi-Contract against Defendants MODERN RENOVATIONS LLC and Does 1-5)**

32.    Plaintiff incorporates the allegations contained in Paragraphs 1 through 31 inclusive, as though fully set forth herein.

33.    Plaintiff hereby pleads in the alternative, that should the Loan Agreement and therefore Guaranty be deemed unenforceable, that Borrower nevertheless received such $150,000.00 deposit on February 24, 2020 from Plaintiff into Borrower's account, that absent the Loan Agreement, Borrower had no right to keep or use.

34.     Plaintiff further pleads in the alternative that Borrower did keep such $150,000.00 to its benefit, and only repaid to Plaintiff a total of $30,605.04, and refuses to repay any more sums to Plaintiff.

35.     Plaintiff further pleads in the alternative that it is has been damaged in the amount of $119,394.96 and is entitled to the remaining $119,394.96 from Borrower as restitution along with interest at the highest legally lawful rate.

## **PRAYER**

ON THE FIRST CLAIM FOR RELIEF (Breach of Contract):

    1. For damages in the sum of $168.894.48; and

    2. For reasonable attorneys' fees.

ON THE SECOND CLAIM FOR RELIEF (Breach of Guaranty):

    3. For damages in the sum of $168.894.48; and

    4. For reasonable attorneys' fees.

ON THE ALTERNATIVE THIRD CLAIM FOR RELIEF (Quasi-Contract):

    5. For restitution damages in the sum of $119,394.96

ON ALL CLAIMS FOR RELIEF:

    6. For prejudgment interest at the legal rate;

    7. For costs of suit incurred herein; and

    8. Any other such relief this Court deems proper.


Dated:  August 25, 2020              NATIONAL FUNDING, INC.


                        By:   /s/ Jennifer E. Duty _____
                              Jennifer E. Duty
                              Attorneys for Plaintiff NATIONAL
                              FUNDING, INC.

# EXHIBIT 1



National Funding, Inc.
9820 Towne Centre Drive
San Diego, CA 92121
P: (800) 840-3367
F: (858) 309-4805
www.nationalfunding.com

## Business Loan Agreement

| Agreement #  FWC391984A | Date 02/24/2020 |
|---|---|

| Borrower (Legal and DBA):  Modern Renovations LLC DBA Modern Renovations | |
|---|---|
| Address: 99 Hialeah Place | City/State/Zip: Martinsburg, WV  25401 |
| Business Phone: (304) 596-1339 | Business Fax: |
| Email Address:  modernlowes@gmail.com | Web Site (URL): https://mymodernrenovations.co |

| Federal Tax ID Number: ████████ |
|---|
| Name of Primary Authorized Signor: Shawn Lee Wolford |
| Name of Signor #2: |
| Name of Signor #3: |

| Lender:  **National Funding, Inc.** | Servicer:  **National Funding, Inc.** |
|---|---|
| Loan Amount: $150,000.00 | |
| Origination Fee: $3,750.00 | |
| Total Repayment Amount: $199,499.52 | |

*Borrower agrees that Lender or Servicer may debit or otherwise withdraw such fee from Borrower's account on the first business day following the funding date.

| **Payment Schedule** | |
|---|---|
| $1,133.52 **Daily Payment Amount (Weekday)** | 176 **Daily Payments** |
| **Please initial this document here:** *sl* | |

**Authorization Agreement for Direct Deposits (ACH or Wire Transfer Credit) and Direct Payments (ACH Debit)**

This Authorization Agreement for Direct Deposit (ACH or Wire Transfer Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Business Loan Agreement relating to a National Funding, Inc.

**DISBURSEMENT OF LOAN PROCEEDS.** By signing below, Borrower authorizes National Funding, Inc. (and/or its successors and assigns) ("Lender") or its designee to disburse the Loan proceeds by initiating an ACH or Wire Transfer credit from the Lender's offices in California to the checking account indicated below (or a substitute checking account Borrower later identifies and is acceptable to Lender) (hereinafter referred to as the "Designated Checking Account") in the disbursal amount set forth in the accompanying Business Loan Agreement. This authorization is to remain in full force and effect until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it.

**AUTOMATIC PAYMENT PLAN.** Enrollment in Lender's Automatic Payment Plan is required for Loan approval. By signing below, Borrower agrees to enroll in this Automatic Payment Plan and authorizes Lender or its designee to collect payments required under the terms of Borrower's Business Loan Agreement by initiating ACH debit entries to the Designated Checking Account. Borrower authorizes Lender or its designee to increase the amount of any scheduled ACH debit entry or assess multiple ACH debits for the amount of any previously scheduled payment(s) that was not paid as provided in the payment schedule and any unpaid Fees. This authorization is to remain in full force and effect until Lender or its designee has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it. Lender or its designee may suspend or terminate Borrower's enrollment in the Automatic Payment Plan immediately if Borrower fails to keep Borrower's designated checking account in good standing or if there are insufficient funds in Borrower's checking account to process any payment. **Notwithstanding** the foregoing, **if Borrower revokes the authorization or Lender suspends or terminates Borrower's enrollment in the Automatic Payment Plan, Borrower remains responsible for making timely payments pursuant to the alternative payment methods described in the Business Loan Agreement.**

**BUSINESS PURPOSE ACCOUNT.** By signing below, Borrower attests that the Designated Checking Account was established for business purposes and is not an account established or used for any personal, family or household purposes and that the loan proceeds deposited into such account by Lender will not be used for any personal, family or household purposes.

**ACCOUNT CHANGES.** Borrower agrees to notify Lender, and its Loan Servicing Agent, promptly, in writing, if there are any changes to the account and routing numbers of the Designated Checking Account. In the event that this account is deemed closed, insufficient or frozen, and Lender obtains information that Borrower maintains a different Checking Account, then Borrower hereby authorizes Lender, without notice or further permission, to replace that new account information on this form and begin immediate withdrawals based on the newly obtained account information.

**MISCELLANEOUS.** Lender is not responsible for any fees charged by Borrower's bank as the result of credits or debits initiated under this agreement. The origination of ACH transactions to Borrower's account must comply with the provisions of U.S. law.

Depository Name:  United Bank

Branch

City: _____  State: _____  Zip: _____

Routing Number: ████████

Account Number: ████████

Print Business Name:  Modern Renovations LLC          Fed Tax ID #: ████████

Signature:  *Shawn Lee Wolford*          Title:  Member          Date:  Feb 24, 2020
Shawn Lee Wolford (Feb 24, 2020)

2

1. **INTRODUCTION.** This Business Loan Agreement ("Agreement") governs your business loan ("Loan") made by National Funding, Inc., a California Finance Lender Number 603A169 headquartered in San Diego, California. Please read it and keep it for your reference. In this Agreement, the words "you," "your" and "Borrower" means each individual or entity that signs this Agreement or on whose behalf this Agreement is signed. The word "Lender," "we," "us" and "our" mean National Funding, Inc. or its successor(s), assign(s), or designee(s).

2. **EFFECTIVE DATE.** This Agreement is effective on the date of funding and disbursement of the Loan Amount as set forth in the Agreement.  Borrower understands and agrees that Lender may postpone, without penalty, the disbursement of amounts to Borrower until all required security interests have been perfected and Lender has received all required personal guarantees or other documentation.  Borrower further understands and agrees that the Agreement is dated for reference purposes only and will only be binding and enforceable on the parties hereto when and if the Loan is funded and proceeds are disbursed to Borrower.

3. **AUTHORIZATION.** Borrower agrees that the Loan made by Lender to Borrower shall be conclusively deemed to have been authorized by Borrower and to have been made pursuant to a duly authorized request therefore on its behalf.

4. **LOAN FOR BUSINESS/COMMERCIAL PURPOSES ONLY. The proceeds of the requested Loan may be used for the specific purposes as set forth in the Use of Proceeds Certification below, and is expressly to be used for general business purposes or working capital needs. The Loan will not be used for personal, family or household purposes. Borrower understands that Borrower's agreement not to use the Loan proceeds for personal, family or household purposes means that certain important duties imposed upon entities making loans for consumer/personal purposes, and certain important rights conferred upon consumers, pursuant to federal or state law will not apply to the Loan or the Agreement. Borrower also understands that Lender will be unable to confirm whether the use of the Loan proceeds conforms to this section. Borrower agrees that a breach by Borrower of the provisions of this section will not affect Lender's right to (i) enforce Borrower's promise to pay for all amounts owed under this Agreement, regardless of the purpose for which the Loan is in fact obtained or (ii) use any remedy legally available to Lender, even if that remedy would not have been available had the Loan been made for consumer purposes.**

5. **PROMISE TO PAY.** Borrower agrees to pay Lender the Total Repayment Amount shown in accordance with the Payment Schedule shown in the Business Loan Agreement. Borrower agrees to enroll in Lender's Automatic Payment Plan and authorizes Lender to collect required payments as provided in the accompanying Authorization Agreement for Direct Deposit (ACH or Wire Transfer Credit) and Direct Payments (ACH Debits).

5.1 **BANK HOLIDAYS AND OTHER EXCEPTIONS.** Lender and/or Operator will debit the Designated Account for Weekday Payment Amounts only on Weekdays on which the Bank is open and able to process ACH transactions. On the Weekday immediately following any Weekday or Weekdays on which the Bank was not open or was not able to process ACH transactions for reasons other than an insufficient Designated Account balance, Lender or Operator will debit the Designated Account for an amount equal to the sum of: (i) the Weekday Payment Amount due on that Weekday, plus (ii) the Weekday Payment Amount(s) due on the preceding Weekday(s) when the Bank was not open or could not process ACH transactions.

6. **APPLICATION OF PAYMENTS.** Lender reserves the right to apply payments to Borrower's Loan in any manner Lender chooses in Lender's sole discretion, which may not include use of a traditional amortization schedule.

7. **SECURITY INTEREST.** Borrower hereby grants to Lender, the secured party hereunder, a continuing security interest in and to any and all "Collateral" as described below to secure payment and performance of all debts, liabilities and obligations of Borrower to Lender hereunder and also any and all other debts, liabilities and obligations of Borrower to Lender of every kind and description, direct or indirect, absolute or contingent, primary or secondary, due or to become due, now existing or hereafter arising, whether or not such obligations are related to the Loan described in this Agreement, by class, or kind, or whether or not contemplated by the parties at the time of the granting of this security interest, regardless of how they arise or by what agreement or instrument they may be evidenced or whether evidenced by any agreement or instrument, and includes obligations to perform acts and refrain from taking action as well as obligations to pay money including, without limitation, all interest, other fees and expenses (all hereinafter called "Obligations"). The Collateral includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: (i) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions; and (ii) all other tangible and intangible personal property, including,

3

BORROWER'S INITIALS:



but not limited to (a) inventory, (b) equipment, (c) investment property, including certificated and un-certificated securities, securities accounts, security entitlements, commodity contracts and commodity accounts, (d) instruments, including promissory notes (e) chattel paper, including tangible chattel paper and electronic chattel paper, (f) documents, (g) letter of credit rights, (h) accounts, including health-care insurance receivables, (i) deposit accounts, (j) commercial tort claims, (k) general intangibles, including payment intangibles and software and (l) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.  Borrower represents and warrants that such collateral has not already been pledged to secure any debt or obligation to a third party.

**8. PROTECTING THE SECURITY INTEREST.** Borrower agrees that Lender and/or Lender's Representative may file any financing statement, lien entry form or other document Lender and/or Lender's Representative requires in order to perfect, amend or continue Lender's security interest in the Collateral and Borrower agrees to cooperate with Lender and Lender's Representative as may be necessary to accomplish said filing and to do whatever Lender and Lender's Representative deems necessary to protect Lender's security interest in the Collateral. In this Agreement "Lender's Representative" means any entity or individual affiliated with Lender that is designated by Lender to serve in such capacity.

**9. INSPECTION OF BORROWER'S PLACE OF BUSINESS; USE OF PHOTOGRAPHS AND TESTIMONIALS.** Lender and Lender's designated representatives and agents shall have the right during Borrower's normal business hours and at any other reasonable time to examine the interior and exterior of any Borrower's place of business. During an examination of any Borrower place of business, Lender may examine, among other things, whether Borrower (i) has a place of business that is separate from any personal residence, (ii) is open for business, (iii) has sufficient inventory to conduct Borrower's business and (iv) has one or more credit card terminals if Borrower processes credit card transactions. When performing an examination, Lender may photograph the interior and exterior of any Borrower place of business, including any signage, and may photograph any individual who has signed the Agreement ("Signatory") unless the Signatory previously has notified Lender that he or she does not authorize Lender to photograph the Signatory. Lender may obtain testimonials from any Signatory, including testimonials on why Borrower needed the Loan and how the Loan has helped Borrower. Any photograph and testimonial will become and remain the sole property of Lender. Borrower and each Signatory grant Lender the irrevocable and permanent right to display and share any photograph and testimonial in all forms and media, including composite and modified representations, for all purposes, including but not limited to any trade or commercial purpose, with any Lender employees and agents and with the general public. Lender may, but is not required to, use the name of any Borrower and Signatory as a credit in connection with any photograph and testimonial. Borrower and each Signatory release Lender from any claims that may arise regarding the use of any photograph or testimonial, including any claims of defamation, invasion of privacy or infringement of moral rights, rights of publicity or copyright.

**10. LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any related documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any related documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. To the extent permitted by applicable law, all such expenses will become a part of the Obligations and, at Lender's option, will: (i) be payable on demand; (ii) be added to the balance of the Loan and be apportioned among and be payable with any installment payments to become due during the remaining term of the Loan; or (iii) be treated as a balloon payment that will be due and payable at the Loan's maturity. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon an Event of Default.

**11. BORROWER'S REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants that: (i) Borrower will comply with all laws, statutes, regulations and ordinances pertaining to the conduct of Borrower's business and promises to hold Lender harmless from any damages, liabilities, costs, expenses (including attorneys' fees) or other harm arising out of any violation thereof; (ii) Borrower's principal executive office and the office where Borrower keeps its records concerning its accounts, contract rights and other property, is that shown in the application; (iii) Borrower is duly organized, licensed, validly existing and in good standing under the laws of its jurisdiction of formation and shall hereafter remain in good standing in that jurisdiction, and is duly qualified, licensed and in good standing in every other state in which it is doing business, and shall hereafter remain duly qualified, licensed and in good standing in every other jurisdiction on which the failure to qualify or become licensed could have a material adverse effect on the financial condition, business or operations of Borrower; (iv)

4

BORROWER'S INITIALS:



the exact legal name of the Borrower is set forth in the application; (v) the execution, delivery and performance of this Agreement, and any other document executed in connection herewith, are within Borrower's powers, have been duly authorized, are not in contravention of law or the terms of Borrower's charter, by-laws or other organization papers, or of any indenture, agreement or undertaking to which Borrower is a party; (vi) all organization papers and all amendments thereto of Borrower have been duly filed and are in proper order and any capital stock issued by Borrower and outstanding was and is properly issued and all books and records of Borrower are accurate and up to date and will be so maintained; (vii) Borrower (a) is subject to no charter, corporate or other legal restriction, or any judgment, award, decree, order, governmental rule or regulation or contractual restriction that could have a material adverse effect on its financial condition, business or prospects, and (b) is in compliance with its organization documents and by-laws, all contractual requirements by which it may be bound and all applicable laws, rules and regulations other than laws, rules or regulations the validity or applicability of which it is contesting in good faith or provisions of any of the foregoing the failure to comply with which cannot reasonably be expected to materially adversely affect its financial condition, business or prospects or the value of the Collateral; and (viii) there is no action, suit, proceeding or investigation pending or, to Borrower's knowledge, threatened against or affecting it or any of its assets before or by any court or other governmental authority which, if determined adversely to it, would have a material adverse effect on its financial condition, business or prospects or the value of the Collateral.

**12. INTEREST AND FEES.** Borrower agrees to pay the Interest Charge in full as set forth in the accompanying Business Loan Agreement. In addition to any other fees described in the Agreement, Borrower agrees to pay the following fees:
A. Origination Fee: A one-time Non-Refundable Origination Fee in the amount set forth in the accompanying Business Loan Agreement.  Borrower agrees that this fee will be deducted along with the first day's payment.
B. Returned Payment Fee: A Returned Payment Fee in the amount of $15.00.
C. Stop Payment Fee: A Stop Payment Fee in the amount of $25.00.
D. Modification Fee: A Modification Fee up to $250.00.
E. Late Fee: A Late Fee in the amount of $10.00 will be charged in the event a payment due and owing is received by the Lender on an untimely basis.
Payments made by Borrower will be applied towards Loan interest and principal after all of the above fees have been assessed in accordance with the foregoing description.

**13. FINANCIAL INFORMATION AND REEVALUATION OF CREDIT.** Borrower and each guarantor (if any) authorize Lender to obtain business and personal credit bureau reports in Borrower's and any guarantor's name, respectively, at any time and from time to time for purposes of deciding whether to approve the requested Loan or for any update, renewal, extension of credit or other lawful purpose. Borrower and each guarantor (if any) agree to submit current financial information, a new credit application, or both, in Borrower's name and in the name of each guarantor, respectively, at any time promptly upon Lender's request. Borrower authorizes Lender to act as Borrower's agent for purposes of accessing and retrieving transaction history information regarding Borrower from Borrower's designated merchant processor(s). Lender may report Lender's credit experiences with Borrower and any guarantor of Borrower's Loan to third parties as permitted by law. Borrower also agrees that Lender may release information to comply with governmental reporting or legal process that Lender believes or determines in its sole discretion may be required, whether or not such is in fact required, or when necessary or helpful in completing a transaction, or when investigating a loss or potential loss. A negative credit report reflecting on Borrower's credit record may be submitted to a credit reporting agency if Borrower fails to fulfill the terms of Borrower's credit obligations hereunder.

**14. ATTORNEYS' FEES AND COLLECTION COSTS.** To the extent not prohibited by applicable law, Borrower shall pay to Lender on demand any and all expenses, including, but not limited to, collection costs, all attorneys' fees and expenses, and all other expenses of like or unlike nature which may be expended by Lender to obtain or enforce payment of Obligations either as against Borrower or any guarantor or surety of Borrower or in the prosecution or defense of any action or concerning any matter growing out of or connected with the subject matter of this Agreement, the Obligations or the Collateral or any of Lender's rights or interests therein or thereto, including, without limiting the generality of the foregoing, any counsel fees or expenses incurred in any bankruptcy or insolvency proceedings and all costs and expenses (including search fees) incurred or paid by Lender in connection with the administration, supervision, protection or realization on any security held by Lender for the debt secured hereby, whether such security was granted by Borrower or by any other person primarily or secondarily liable (with or without recourse) with respect to such debt, and all costs and expenses incurred by Lender in connection with the defense, settlement or satisfaction of any action, claim or demand asserted against Lender in connection therewith, which amounts shall be considered advances to protect Lender's security, and shall be secured.

5

BORROWER'S INITIALS:



**15. DEFAULT.** The occurrence of any one or more of the following events (herein, "Events of Default") shall constitute, without notice or demand, a default under this Agreement and all other agreements between Lender and Borrower and instruments and papers given Lender by Borrower, whether such agreements, instruments, or papers now exist or hereafter arise: (i) Lender is unable to collect any Automatic Payment Plan payment on three consecutive dates due and/or, Borrower fails to pay any Obligations on three consecutive dates due through the designated alternative payment method; (ii) Borrower fails to comply with, promptly, punctually and faithfully perform or observe any term, condition or promise within this Agreement; (iii) the determination by Lender that any representation or warranty heretofore, now or hereafter made by Borrower to Lender, in any documents, instrument, agreement, or paper was not true or accurate when given; (iv) the occurrence of any event such that any indebtedness of Borrower from any lender other than Lender could be accelerated, notwithstanding that such acceleration has not taken place; (v) the occurrence of any event that would cause a lien creditor, as that term is defined in Section 9−102 of the Uniform Commercial Code, to take priority over the Loan made by Lender; (vi) a filing against or relating to Borrower of (a) a federal tax lien in favor of the United States of America or any political subdivision of the United States of America, or (b) a state tax lien in favor of any state of the United States of America or any political subdivision of any such state; (vii) the occurrence of any event of default under any other agreement between Lender and Borrower or instrument or paper given Lender by Borrower, whether such agreement, instrument, or paper now exists or hereafter arises (notwithstanding that Lender may not have exercised its rights upon default under any such other agreement, instrument or paper); (viii) any act by, against, or relating to Borrower, or its property or assets, which act constitutes the application for, consent to, or sufferance of the appointment of a receiver, trustee or other person, pursuant to court action or otherwise, over all, or any part of Borrower's property; (ix) the granting of any trust mortgage or execution of an assignment for the benefit of the creditors of Borrower, or the occurrence of any other voluntary or involuntary liquidation or extension of debt agreement for Borrower; (x) the failure by Borrower to generally pay the debts of Borrower as they mature; (xi) adjudication of bankruptcy or insolvency relative to Borrower; (xii) the entry of an order for relief or similar order with respect to Borrower in any proceeding pursuant to Title 11 of the United States Code entitled "Bankruptcy" (the "Bankruptcy Code") or any other federal bankruptcy law; (xiii) the filing of any complaint, application or petition by or against Borrower initiating any matter in which Borrower is or may be granted any relief from the debts of Borrower pursuant to the Bankruptcy Code or any other insolvency statute or procedure; (xiv) the calling or sufferance of a meeting of creditors of Borrower; (xv) the meeting by Borrower with a formal or informal creditor's committee; (xvi) the offering by or entering into by Borrower of any composition, extension or any other arrangement seeking relief or extension for the debts of Borrower, or the initiation of any other judicial or non-judicial proceeding or agreement by, against or including Borrower that seeks or intends to accomplish a reorganization or arrangement with creditors; (xvii) the entry of any judgment against Borrower, which judgment is not satisfied or appealed from (with execution or similar process stayed) within 15 days of its entry; (xviii) the occurrence of any event or circumstance with respect to Borrower such that Lender shall believe in good faith that the prospect of payment of all or any part of the Obligations or the performance by Borrower under this Agreement or any other agreement between Lender and Borrower is impaired or there shall occur any material adverse change in the business or financial condition of Borrower; (xix) the entry of any court order that enjoins, restrains or in any way prevents Borrower from conducting all or any part of its business affairs in the ordinary course of business; (xx) the occurrence of any uninsured loss, theft, damage or destruction to any material asset(s) of Borrower; (xxi) any act by or against, or relating to Borrower or its assets pursuant to which any creditor of Borrower seeks to reclaim or repossess or reclaims or repossesses all or a portion of Borrower's assets; (xxii) the termination of existence, dissolution or liquidation of Borrower or the ceasing to carry on actively any substantial part of Borrower's current business; (xxiii) this Agreement shall, at any time after its execution and delivery and for any reason, cease to be in full force and effect or shall be declared null and void, or the validity or enforceability hereof shall be contested by Borrower or any guarantor of Borrower denies it has any further liability or obligation hereunder; (xxiv) any guarantor or person signing a support agreement in favor of Lender shall repudiate, purport to revoke or fail to perform his or her obligations under his guaranty or support agreement in favor of Lender or any corporate guarantor shall cease to exist; (xxv) any material change occurs in Borrower's ownership or organizational structure (acknowledging that any change in ownership will be deemed material when ownership is closely held); (xxvi) a guarantor dies; if Borrower is a sole proprietorship, the owner dies; if Borrower is a trust, a trustor dies; if Borrower is a partnership, any general or managing partner dies; if Borrower is a corporation, any principal officer or 10% or greater shareholder dies; if Borrower is a limited liability company, any managing member dies; if Borrower is any other form of business entity, any person(s) directly or indirectly controlling 10% or more of the ownership interests of such entity dies.

**16. RIGHTS AND REMEDIES UPON DEFAULT.** Subject to applicable law, if an Event of Default occurs under this Agreement, at any time thereafter, Lender may exercise any one or more of the following rights and remedies:
A. <u>Refrain from Disbursing Loan Proceeds</u>: Lender may refrain from disbursing Borrower's Loan proceeds to Borrower's Designated Checking Account.

BORROWER'S INITIALS:



sl

B. <u>Debit Amounts Due From Borrower's Accounts</u>: Lender may debit from Borrower's Designated Checking Account all Automatic Payment Plan payments that Lender was unable to collect and/or the amount of any other Obligations that Borrower failed to pay.

C. <u>Accelerate Indebtedness</u>: Lender may declare the entire Obligations immediately due and payable, without written notice of any kind to Borrower.

D. <u>Other Rights and Remedies</u>: Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity or otherwise.

E. <u>Election of Remedies</u>: Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, any related documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower under the Agreement, after Borrower's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**17. PREPAYMENT.** You may prepay in full all of your obligations under this Agreement by paying us an amount equal to the following (the "<u>Early Repayment Amount</u>"): (a) any accrued and unpaid payments, fees and charges due as of the date of calculations; plus (b) the sum of all future Scheduled Payments and other fees and charges due after the date of calculation discounted at the rate of: 7% if the Early Repayment Amount is received by us within 100 days of Effective Date; (c) all payments must be current and in good standing at the time of payoff to be eligible for discount.

**18. CONSENT TO JURISDICTION AND VENUE.** Borrower and Lender agree that any action or proceeding to enforce or arising out of this Agreement may be commenced in any court of the State of California or in the United States District Court for the Southern District of California, and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Borrower, or as otherwise provided by the laws of the State of California or the United States of America. Borrower and Lender agree that venue is proper in such courts.

**19. NO WAIVER BY LENDER.** No delay or omission on the part of Lender in exercising any rights under this Agreement, any related guaranty or applicable law shall operate as a waiver of such right or any other right. Waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion. All Lender's rights and remedies, whether evidenced hereby or by any other agreement, instrument or paper, shall be cumulative and may be exercised singularly or concurrently.

**20. ASSIGNMENT.** This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties hereto; provided, however, that Borrower may not assign this Agreement or any rights or duties hereunder without Lender's prior written consent and any prohibited assignment shall be absolutely void. No consent to an assignment by Lender shall release Borrower from its Obligations. Lender may assign this Agreement and its rights and duties hereunder and no consent or approval by Borrower is required in connection with any such assignment. Lender reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in Lender's rights and benefits hereunder. In connection with any assignment or participation, Lender may disclose all documents and information that Lender now or hereafter may have relating to Borrower or Borrower's business. To the extent that Lender assigns its rights and obligations hereunder to another party, Lender thereafter shall be released from such assigned obligations to Borrower and such assignment shall affect a notation between Borrower and such other party.

**21. SEVERABILITY.** If one or more provisions of this Agreement (or the application thereof) is determined invalid, illegal or unenforceable in any respect in any jurisdiction, the same shall not invalidate or render illegal or unenforceable such provision (or its application) in any other jurisdiction or any other provision of this Agreement (or its application).

**22. NOTICES.** Except as otherwise provided in this Agreement, notice under this Agreement must be in writing. Notices will be deemed given when deposited in the U.S. mail, postage prepaid, first class mail; when delivered in person; or when sent by registered mail; by certified mail; or by nationally recognized overnight courier. Notice to Borrower will be sent to Borrower's last known address in Lender's records for this Loan. Notice to Lender may be sent to National Funding, Inc., 9820 Towne Centre Drive, San Diego, CA 92121.

**23. RECORDKEEPING REQUIREMENTS.** Lender shall have no obligation to maintain any electronic records or any documents, schedules, invoices or any other paper delivered to Lender by Borrower in connection with this Agreement or

BORROWER'S INITIALS:



any other agreement other than as required by law. Borrower will at all time keep accurate and complete records of Borrower's accounts. At Lender's request, Borrower shall deliver to Lender schedules of accounts and general intangibles. Lender, or any of its agents, shall have the right to call at Borrower's place or places of business at intervals to be determined by Lender, and without hindrance or delay, to inspect, audit, check, and make extracts from any copies of the books, records, journals, orders, receipts, correspondence that relate to Borrower's accounts or other transactions between the parties thereto and the general financial condition of Borrower and Lender may remove any of such records temporarily for the purpose of having copies made thereof.

**24. GOVERNING LAW.** Our relationship [including this Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement] is governed by, and this Agreement will be construed in accordance with, applicable federal law and (to the extent not preempted by federal law) California law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be governed by such laws. **Borrower understands and agrees that (i) Lender is located in California, (ii) Lender makes all credit decisions from Lender's office in California, (iii) the Loan is made in California (that is, no binding contract will be formed until Lender receives and accepts Borrower's signed Agreement in California and the Loan is funded) (iv) Loan proceeds are distributed from California  (v) Borrower's payments are not accepted until received by Lender in California; and, therefore, (vi) the Loan has a sufficient and tangible nexis to California.**

**25. WAIVER OF NOTICES AND OTHER TERMS.** Except for any notices provided for in this Agreement, Borrower and any person who has obligations pursuant to this Agreement (*e.g.*, a guarantor), to the extent not prohibited by applicable law hereby, waives demand, notice of nonpayment, notice of intention to accelerate, notice of acceleration, presentment, protest, notice of dishonor and notice of protest. To the extent permitted by applicable law, Borrower and any person who has obligations pursuant to this Agreement also agree: Lender is not required to file suit, show diligence in collection against Borrower or any person who has obligations pursuant to this Agreement, or proceed against any Collateral; Lender may, but will not be obligated to, substitute, exchange or release any Collateral; Lender may release any Collateral, or fail to realize upon or perfect Lender's security interest in any Collateral; Lender may, but will not be obligated to, sue one or more persons without joining or suing others; and Lender may modify, renew, or extend this Agreement (repeatedly and for any length of time) without notice to or approval by any person who has obligations pursuant to this Agreement (other than the party with whom the modification, renewal or extension is made).

**26. MONITORING, RECORDING AND ELECTRONIC COMMUNICATIONS.** In order to ensure a high quality of service for Lender's customers, Lender may monitor and/or record telephone calls between Borrower and Lender's employees or agents. Borrower acknowledges that Lender may do so and agrees in advance to any such monitoring or recording of telephone calls. Borrower also agrees that Lender may communicate with Borrower electronically by e-mail.

**27. JURY TRIAL WAIVER.** To the extent not prohibited by applicable law, Borrower and Lender waive their right to a trial by jury of any claim or cause of action based upon, arising out of or related to the Agreement and all other documentation evidencing the Obligations, in any legal action or proceeding. Any such claim or cause of action shall be tried by court sitting without a jury.

**28. ENTIRE AGREEMENT.** Any application Borrower signed or otherwise submitted in connection with the Loan, the accompanying Business Loan Agreement, the Authorization Agreement for Direct Deposit (ACH or Wire Transfer Credit) and Direct Payments (ACH Debits), and any other documents required by Lender now or in the future in connection with this Agreement and Borrower's Loan are hereby incorporated into and made a part of this Agreement, constitutes the entire agreement between the parties, and supersedes and extinguishes all previous drafts, agreements, arrangements and understandings between them, whether written or oral, relating to this subject matter.  No supplement, modification, waiver or amendment of this Agreement shall be effective or binding unless executed in a writing by Lender and Borrower.

**29. COUNTERPARTS; FAX SIGNATURES**. This Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. For purposes of the execution of this Agreement, electronic signatures and fax signatures shall be treated in all respects as original signatures.

**30. CUSTOMER SERVICE CONTACT INFORMATION**. If you have questions or comments about your Loan, you may contact our servicer, National Funding, Inc., c/o Loan Servicing, 9820 Towne Centre Drive, Suite 200, San Diego, CA 92121.

BORROWER'S INITIALS:



sl

**31. CLASS ACTION WAIVER.** The parties waive any right to assert any claims against the other party as a representative or member in any class or representative action, except where such waiver is prohibited by law against public policy. Subject to Section 14 above, to the extent either party is permitted by law or court of law to proceed with a class or representative action against the other, the parties agree that: (1) the prevailing party shall not be entitled to recover attorneys' fees or costs associated with pursuing the class or representative action (not withstanding any other provision in this agreement); and (2) the party who initiates or participates as a member of the class will not submit a claim or otherwise participate in any recovery secured through the class or representative action.  For purposes of clarity, the limitations in this Section 31, shall not apply to the costs associated with defending the class or representative action.

9

BORROWER'S INITIALS:

_sl_
sl

**32. PERSONAL GUARANTY. As Lender is unwilling to extend or continue credit to the Borrower unless it receives a guaranty of the undersigned covering the liabilities of the Borrower to Lender, as previously defined, the undersigned (each a "Guarantor"), jointly and severally (if more than one), absolutely and unconditionally guarantee the prompt payment to Lender, including its successors and assignees, of any and all Obligations incurred by the Borrower pursuant to the Agreement. Each Guarantor further agrees to repay the Obligations on demand, without requiring Lender first to enforce payment against Borrower.  This is a guarantee of payment and not of collection.**

**Guarantor hereby grants to Lender, the secured party hereunder, a continuing security interest in and to any and all "Collateral" as described below to secure payment and performance of all debts, liabilities and obligations of Guarantor  to Lender hereunder.  The term Collateral as used in this guaranty, refers to and includes the following property that Guarantor now owns, acquire or creates immediately upon the acquisition or creation thereof each of the Guarantor's tangible and intangible personal property, fixtures, furniture, cash, insurance proceeds, promissory notes, leasehold interests, investment property, deposit accounts, commercial tort claims, documents, collectables, money or oil, gas, or other mineral rights and chattel paper.**

**This is an absolute, unconditional, primary, and continuing obligation and will remain in full force and effect until the first to occur of the following: (i) all of the Obligations have been indefeasibly paid in full, and Lender has terminated this Personal Guaranty, or (ii) 30 days after the date on which written notice of revocation is actually received and accepted by Lender. No revocation will affect: (i) the then existing liabilities of the revoking Guarantor under this Personal Guaranty; (ii) Obligations created, contracted, assumed, acquired or incurred prior to the effective date of such revocation; (iii) Obligations created, contracted, assumed, acquired or incurred after the effective date of such revocation pursuant to any agreement entered into or commitment obtained prior to the effective date of such revocation; or (iv) any Obligations then or thereafter arising under the agreements or instruments then in effect and then evidencing the Obligations.**

**Each Guarantor waives all notices to which the Guarantor might otherwise be entitled by law, and also waives all defenses, legal or equitable, otherwise available to the Guarantor, including but not limited to exoneration. This Personal Guaranty will be exclusively construed in accordance with the laws of the State of California, and will inure to the benefit of Lender, its successors and assigns. THIS GUARANTEE AND EACH GUARANTOR HEREBY AGREE TO CONSENT TO THE EXCLUSIVE VENUE AND JURISDICTION OF ANY COURT OF THE STATE OF CALIFORNIA FOR ALL MATTERS OR IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CALIFORNIA.**

**Guarantor #1:**   X *Shawn Lee Wolford*
Shawn Lee Wolford (Feb 24, 2020)

**Name:**   Shawn Lee Wolford

**Date:**   Feb 24, 2020


**Guarantor #2:**   X

**Name:**

**Date:**


**Guarantor #3:**   X

**Name:**

**Date:**

**33. CERTIFICATION AND SIGNATURES.** By signing below or authorizing the person signing below to sign on its behalf, Borrower certifies that Borrower has received a copy of this Agreement and that Borrower has read, understood and agreed to be bound by its terms. Each person signing below certifies that each person is signing on behalf of the Borrower in the capacity indicated below the signer's name and that such signer is authorized to execute this Agreement on behalf of or in the stated relation to Borrower.

**Use of Proceeds Certification**

As referred to in Section 4, by signing below, the Borrower also certifies, acknowledges and understands that the proceeds from the requested Loan will **not be used for personal household or family purposes,** and will be used solely for purchasing or acquiring specific products or services, for the following purposes only:

  • Insurance (but not self-insurance programs)
  • Services or equipment merchandise, inventory or specified goods
  • Improvements / construction of facilities (but not purchase of real estate)
  • Loans to finance specified sales transactions
  • Public works projects or educational services (e.g., training)

**Borrower:**  Modern Renovations LLC

**Signor #1:**   X _Shawn Lee Wolford_
                    Shawn Lee Wolford (Feb 24, 2020)
**Name:**        Shawn Lee Wolford
**Title:**       Member
**Date:**        Feb 24, 2020

**Signor #2:**   X
**Name:**
**Title:**
**Date:**

**Signor #3:**   X
**Name:**
**Title:**
**Date:**

**Accepted and Approved by**
**NATIONAL FUNDING, INC.**
A California Finance Lender, Number 603A169

BY:   _nikki maldonado_
       nikki maldonado (Feb 24, 2020)
Title:   Executive VP of Credit & Operations
Date:    Feb 24, 2020
Place:   San Diego, California

11



Phone: (800) 840-3367

Fax:    (858) 309-4805

Email: kburke@nationalfunding.com

**Merchant
Pre-Qualification Form**

| Business Legal Name: | Business DBA Name: |
|---|---|
| Modern Renovations LLC | Modern Renovations |

Type of Business Entity (Select One)
LLC

| Tax Id #/EIN #: | State of Incorporation: | Use of Proceeds: |
|---|---|---|
| | | |

| Industry Type (SIC Code Or Description): | Business Location: | Rented | Mortgaged | Amount: |
|---|---|---|---|---|
| 1521 | | | | |

Gross Annual Sales (Previous Year's Tax Return):
$

Business Start Date:

**Owner/Officer**

Is Primary Contact ☐

Job Title:
Member

| Last Name: | First Name: | SS#: | Date of Birth: | Home Phone: |
|---|---|---|---|---|
| Wolford | Shawn Lee | | | |

| Street Address: | City: | State: | Zip Code: |
|---|---|---|---|
| | | | |

**Authorizations:**

The Merchant and Owner(s)/Officer(s) identified above (individually, an "Applicant") each represents, acknowledges and agrees that (1) all information and documents provided to National Funding, Inc. ("NF") including credit card processor statements are true, accurate and complete, (2) Applicant will immediately notify NF of any change in such information or financial condition, (3) Applicant authorizes NF to disclose all information and documents that NF may obtain including credit reports to other persons or entities (collectively, "Assignees") that may be involved with or acquire commercial loans having daily repayment features and/or Merchant Cash Advance transactions, including without limitation the application therefor (collectively, "Transactions") and each Assignee is authorized to use such information and documents, and share such information and documents with other Assignees, in connection with potential Transactions, (4) each Assignee will rely upon the accuracy and completeness of such information and documents, (5) NF, Assignees, and each of their representatives, successors, assigns and designees (collectively, "Recipients") are authorized to request and receive any investigative reports, credit reports, statements from creditors or financial institutions, verification of information, or any other information that a Recipient deems necessary, (6) Applicant waives and releases any claims against Recipients and any information-providers arising from any act or omission relating to the requesting, receiving or release of information, and (7) each Owner/Officer represents that he or she is authorized to sign this form on behalf of Merchant.

Owner/Officer Name        Shawn Lee Wolford

Owner/Officer Signature   *Shawn Lee Wolford*        Date:  Feb 24, 2020

# Business Loan Agreement
## Amendment (R)
## Unsettled Balance

**Agreement #:** FWC391984A
**Date:** 02/24/2020
**Business Legal Name:** Modern Renovations LLC
**Re: Unsettled Balance**

This amendment to Borrower Business Loan Agreement "Amendment" is made as of 02/24/2020 between National Funding, Inc., a California Corporation (the "Lender") and Modern Renovations LLC (the "Borrower"). The Lender and the Borrower are sometimes referred to herein collectively as the "Parties "and each as a "Party."

Whereas, the Parties desire to modify certain terms of the Business Loan Agreement ("the Agreement") dated 02/24/2020 .

In consideration of the above premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, do hereby agree and amend the Agreement as follows:

**There is an outstanding balance due to the Lender at the time of funding ("Unsettled Balance"). This "Unsettled Balance" will be satisfied in full by a portion of the funding amount as indicated on the Business Loan Agreement** FWC391984A **dated** 02/24/2020 **. The difference between the funding amount as indicated in agreement number** FWC391984A **and the aforementioned 'Unsettled Balance' will now be recognized as the 'Disbursed Amount'.**

**The 'Unsettled Balance' and the 'Disbursed Amount' will be confirmed during the final, recorded verbal verification call with an authorized representative of the Servicer.**

The Agreement will remain in full force and effect as modified by this Amendment. This Amendment will be governed by and construed in accordance with the laws of the State of California without giving effect to the principles of conflicts of laws. This Amendment may be executed in counterparts, all of which together will constitute one and the same instrument. Facsimile signatures will be deemed to be original signatures and each party hereto may rely on a facsimile signature as an original for purposes of enforcing this Amendment.

IN WITNESS WHEREOF, each of the undersigned has executed, or has caused to be executed, this Amendment as of the date first written above.

**Borrower:**

**By:** X *Shawn Lee Wolford*
Shawn Lee Wolford (Feb 24, 2020)

**Name:**    Shawn Lee Wolford

**Title:**    Member

**Date:**    Feb 24, 2020

To the extent set forth herein and in the Business Loan Agreement, each of the parties is obligated upon their execution of the Amendment. The above-signed represents that he or she is authorized to sign this Amendment for Borrower and that the information provided in this and all of the Borrower's forms are true and accurate in all respects. If the information is false or inaccurate, the Borrower will be deemed in material breach of all agreements between the Borrower and the Lender and the Lender will be entitled to all remedies available under law.

**ADDITIONAL TERMS ARE SET FORTH IN THE BUSINESS LOAN AGREEMENT.**

1  |  Jennifer E. Duty, SBN 245308
2  |  jduty@nationalfunding.com
   |  James E. Hawley, SBN 299723
3  |  jhawley@nationalfunding.com
   |  NATIONAL FUNDING, INC.
4  |  9820 Towne Centre Drive
   |  San Diego, California 92121
5  |  Tel: (800) 361-4103
   |  Fax: (888) 841-3948
6  |  Attorneys for Plaintiff NATIONAL FUNDING, INC.

7

8

9  |  **UNITED STATES DISTRICT COURT**

10  |  **CENTRAL DISTRICT OF CALIFORNIA**

11  |  **SOUTHERN DIVISION**

12  |  NATIONAL FUNDING, INC.,    |  Case No. 8:20-cv-1374

13  |  a California corporation,

14  |                          Plaintiff,    |  [Assigned to the Hon. David O. Carter]

15  |  v.    |  **CERTIFICATE OF SERVICE**

16  |  MODERN RENOVATIONS, LLC, a    |  Complaint Filed:    May 26, 2020
   |  West Virginia Limited Liability    |  Trial Date:          To Be Set
17  |  Company; SHAWN LEE WOLFORD,
   |  an individual; and DOES 1-10,
18  |  inclusive,

19  |                          Defendants.

20

21

22

23

24  |     I hereby certify that I am employed in the County of San Diego, State of

25  |  California. I am over the age of 18 years and not a party to this action. My

26  |  business address is National Funding, Inc., 9820 Towne Centre Dr., San Diego,

27  |  California 92121.

28

I hereby certify that on August 25, 2020, I used the CM/ECF system for transmittal of a Notice of Electronic Filing to all attorneys of record in this case registered for CM/ECF service, and listed below, of the filing of Plaintiff's FIRST AMENDED COMPLAINT

**SERVICE LIST**
Berwin Cohen
Wolffers Cohen and Edderai LLP
226 Willow Tree Road
Monsey, NY 10952
Phone: 646-696-0744
Fax: 845-356-5853
Email: berwin@wolfferscohen.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on August 25, 2020, at San Diego, California.

_____
Amy Young